IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01976-WJM-MJW

JOSEPH VIGIL,

Plaintiff(s),

v.

BENT COUNTY CORRECTIONAL FACILITY (Private Prison Monitor Unit) MEDICAL
DOUG ROBERTS,
NURSE RAY RICE (Employee), Contractor of CDOC, and
DR. MAURICE FAUVEL, (Employee) (Contractor of C.DOC.),

Defendant(s).

---

**RECOMMENDATION ON
MOTION FOR SUMMARY JUDGMENT (Docket No. 68)**

---

**Entered by Magistrate Judge Michael J. Watanabe**

This matter was referred to this court pursuant to an Order Referring Case issued by Judge William J. Martinez on September 9, 2013 (Docket No. 12).

The operative pleading is the Second Amended Prisoner Complaint (Docket No. 23) which is brought pursuant to 42 U.S.C. § 1983.  In that pleading, plaintiff alleges Eighth Amendment claims for inadequate and/or delayed medical care for hemorrhoids and back pain.

Now before the court for a report and recommendation is defendants' Motion for Summary Judgment (Docket No. 68).  Plaintiff filed a Response (Docket No. 71).  The court has carefully considered these motion papers as well as applicable Federal Rules of Civil Procedure and case law.  In addition, the court has taken judicial notice of the

court file. The court now being fully informed, makes the following findings, conclusions of law, and recommendation.

Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Id. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as

3

are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).  "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment."  Southway, 149 F. Supp.2d at 1274.  "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party."  Id. at 1273.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

"[P]risoners have an Eighth Amendment right to adequate medical care . . . ." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001).  "In keeping with the principle that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately

4

indifferent to the serious medical needs of prisoners in their custody.'" Id. "[T]he Constitution is only implicated in situations in which prison officials act purposefully to impose unnecessary pain on an inmate; 'inadvertent' denials of care or negligent diagnosis or treatment does not rise to the level of an 8th Amendment violation." Ajaj v. Federal Bureau of Prisons, 2011 WL 902440, at *16 (D. Colo. Mar. 10, 2011). To plead an Eighth Amendment claim of deliberate indifference to medical needs, "an inmate must allege: (i) that he suffered from a serious medical need–that is, one that has been diagnosed by a medical provider as requiring treatment or one which even a lay person would easily recognize as requiring medical attention; and (ii) the Defendant was subjectively aware of that need and that failing to treat it would pose an excessive risk to the inmate's health or safety, but nevertheless elected to delay or deny treatment for it." Id. "The subjective component requires an examination into the defendant's actual state of mind. To satisfy this element, the inmate must plead facts that show that the defendant both 'actually knew of' and 'deliberately disregarded' the fact that the inmate was suffering from a serous medical need." Id. Furthermore, "[a] delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm.'" Kneen v. Zavaras, 2012 WL 5493854, at *11 (D. Colo. Nov. 13, 2012) (quoting Oxendine, 241 F.3d at 1276). Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001).

Here, defendants first assert that defendant Doug Roberts did not personally participate in the alleged violations. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d

1416, 1423 (10th Cir. 1997). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Defendant Roberts states the following in his Affidavit. (Docket No. 68-3). He does not provide direct health care to offenders. He first became aware of plaintiff's medical needs on September 17, 2012, upon review of a kite that plaintiff submitted that day stating to disregard a previous kite that Roberts had not yet seen. The following day, September 18, 2012, Roberts saw the original kite that plaintiff submitted complaining of his hemorrhoid issues. On September 28, 2012, Roberts noted that plaintiff had submitted kites and been seen by a nurse on August 23, 2012, September 3, 2012, and September 14, 2012, and had not yet been seen by a medical provider. After Roberts had reviewed plaintiff's complaints submitted to offender services, he spoke with plaintiff, but Roberts does not recall the specifics of his conversation with plaintiff. It is facility policy to refer an inmate to a medical provider after he has seen a nurse twice for the same issue. Roberts then requested, via e-mail, that plaintiff be seen by a medical provider, and plaintiff was seen that same day that Roberts made the request. (Docket No. 68-4). On September 30, 2012, Roberts received a kite from plaintiff noting that Roberts should dismiss any grievances related to his medical needs because the medical providers were doing what they could. (Docket No. 68-8). Roberts has not had any further involvement with plaintiff's medical care. Roberts did everything in his power to ensure adequate medical care for plaintiff, but he did not participate in any direct treatment or delay in treatment.

Plaintiff did not respond to defendants' motion with any of the evidentiary

6

materials listed in Rule 56(c). With respect to defendant Roberts, plaintiff merely states the following in his Response. Roberts was the supervisor of the medical Private Prison Monitor Unit in BCCF.

> . . . Roberts did personally have a [sic] involvement in the delay of plaintiffs [sic] serious needs when we did have a meeting in his office he did express to me that I did need surgery but the surgery would be put off he didn't state no legit or good reason why it would be put off. Due to the delay defendant has contributed to plaintiff's undisputed permanent damage to his rectum for the rest of his life.
>
> [] The plaintiff did send a kite to the case manager to dismiss any grievances related to his medical needs because at the time plaintiff thought that the condition would get better or heal on its own ,but he didn't realize that the condition he had was more worse later on.
>
> [] Doug Roberts did intentionally delay plaintiffs [sic] serious needs for no legit reason. Plaintiff did suffer from anal condylomas it's a viral wart if left treated [sic] can be deadly to the plaintiffs [sic] health, also the intentional delay of the much needed surgery plaintiff does suffer from permanent damage to his rectum ,plaintiff does have trouble using the restroom even after surgery about 17 months ago. Plaintiff does have trouble sitting down for any long periods of time, it simply hurts too bad.

(Docket No. 71 at 2) (emphasis in original removed).

Plaintiff has not provided anything other than conclusory allegations that Roberts was somehow involved in causing the delay in plaintiff's surgery. "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006). Merely informing plaintiff that the surgery was being "put off" does not equate to Roberts causing any change in scheduling. Plaintiff has provided nothing to show that a factual dispute exists concerning Roberts' lack of involvement in the denial or delaying of any of the plaintiff's medical care. Furthermore, the uncontroverted medical record shows that Roberts was not deliberately indifferent to any serious medical need.

Therefore, it is recommended that judgment enter for defendant Roberts.

The uncontroverted record further shows that defendants Rice and Fauvel were also not deliberately indifferent to a serious medical need. That record and Rice's Affidavit (Docket No. 68-5) shows the following with respect to Rice. Rice's participation in plaintiff's health issues was limited to plaintiff's hemorrhoid complaints the week prior to his hemorrhoid surgery. More specifically, on December 26, 2012, plaintiff submitted a medical kite, and Rice saw plaintiff two days later. Rice sought the direction of a medical provider, who gave a verbal order for Annusol Suppositories. (Docket No. 68-9). Plaintiff submitted another kite on January 4, 2013, and was seen that same day by Rice at DRDC. Rice set plaintiff up with another follow-up appointment and informed plaintiff that he would be having surgery for the hemorrhoid issue. (Docket No. 68-10). According to Rice and the Kites History report (Docket No. 68-6), this was the extent of the kites filed at DRDC during the time of the alleged constitutional violation involving Rice, and plaintiff did not complain of back pain at DRDC. Rice provided treatment within days or even the same day that plaintiff's kites were submitted, and the uncontroverted record shows that there was no delay by Rice with regard to plaintiff's care. There is no evidence that Rice was deliberately indifferent in the sense of "criminal recklessness" regarding plaintiff's kites or complaints of hemorrhoid pain as alleged by plaintiff. Furthermore, while plaintiff complains that Rice did not provide the cream and/or other medications he requested, an inmate does not have a constitutional or statutory right to self-prescribe medication, and Rice prescribed those medications available and thought to be medically appropriate for plaintiff's needs.

The uncontroverted record shows the following with regard to Fauvel. On

8

January 16, 2013, plaintiff was prescribed 600 mg of Ibuprofen twice a day at Sterling Correctional Facility ("SCF"). (Docket No. 68-11). Plaintiff then submitted a kite at SCF on January 20, 2013, complaining of back pain. On January 25, 2013, plaintiff agreed to stop taking all NSAIDS (including the Ibuprofen) prior to his hemorrhoid surgery for medical purposes. (Docket No. 68-12). Plaintiff left SCF for that surgery before anyone could respond to the initial kite related to his back pain. Between January 29, 2013, and March 5, 2013, plaintiff was located at DRDC, and thus no one at SCF, including Fauvel, could have responded to the back pain complaint. Once plaintiff returned to SCF in March 2013, Fauvel was not indifferent toward plaintiff's medical care. He saw and treated plaintiff several times upon plaintiff's return to SCF. In early March 2013, Fauvel first treated plaintiff for his allergies and back pain, putting plaintiff back on the Ibuprofen and setting up an appointment with a medical provider in April. (Docket No. 68-13). Fauvel saw plaintiff again prior to that April appointment in response to another kite about plaintiff's rectal surgical issues and his back pain. Fauvel set up a follow-up appointment regarding the hemorrhoid issues and maintained the previously-scheduled appointment for plaintiff's back pain. (Docket No. 68-14). Fauvel did see plaintiff another time before changing the pain medication for plaintiff's back, but this appointment was for the purpose of an American's with Disabilities Act Screening, and thus no new medications were prescribed. (Docket No. 68-15). Fauvel then saw plaintiff on April 23, 2013, for his back pain, at which time plaintiff expressed that Ibuprofen was not helping. Fauvel thus prescribed Naproxen and Balcofen. (Docket No. 68-1 at 1). He also arranged for x-rays within the next week and for a follow-up visit. (Docket No. 68-1 at 1). Fauvel continued to treat plaintiff for his back pain through

9

July 2013, continuing to prescribe approved medications in an attempt to find something that worked. He ordered x-rays to be taken of plaintiff's back to confirm a diagnosis of scoliosis, and after receiving the results, prescribed more pain medication, Pamelor, and requested an ADA screening. (Docket Nos. 68-16 and 68-18).

In this case, a close reading of the Amended Complaint shows that plaintiff is complaining about not getting "proper" treatment and not getting the specific medication he requested. A review of the uncontroverted medical records, however, shows that plaintiff was repeatedly seen by the defendants for his medical issues, x-rays were taken, and various medications, including suppositories and different pain medications, were prescribed and provided. For example, defendant Rice sought input from a doctor, who ordered suppositories. Although plaintiff apparently believes other treatment was necessary, defendants' refusal to provide a particular course of treatment sought by the plaintiff does not constitute deliberate indifference. See Gee v. Pacheco, 627 F.3d 1178, 1192 (10th Cir. 2010 (Inmate alleged he was not given the medications he desired for his headaches but admitted being given other medication, so his complaint amounted to merely a disagreement with the doctor's medical judgment concerning the most appropriate treatment. However, "[d]isagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation."); Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 811 (10th Cir. 1999) ("A negligent failure to provide adequate care, even on constituting medical malpractice, does not give rise to a constitutional violation. . . . Moreover, a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."); Coppinger v. Townsend, 398 F.2d 392, 394 (10th Cir.

10

1968) (Inmate's "right is to medical care–not to the type or scope of medical care which he personally desires. A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983."). Furthermore, "in assessing the chosen method a treatment, it must be kept in mind that a doctor is required to take only 'reasonable measures to abate' the inmate's medical condition.'" Wishneski v. Andrade, – Fed. Appx. —, 2014 WL 3453607, at *5 (10th Cir. July 16, 2014) (quoting Callahan v. Poppell, 471 F.3d 1155, 1159 (10th Cir. 2006)). In addition, with regard to plaintiff's complaint of not receiving proper medical treatment, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment." Callahan, 471 F.3d at 1159. Plaintiff has simply made no showing to satisfy the subjective prong of a deliberate indifference claim. "[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." Self v. Crum, 439 F.3d at 1232.

Based upon the findings above, it is recommended that judgment enter for the defendants.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the defendants' Motion for Summary Judgment (Docket No. 68) be **granted**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District**

11

**Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  August 26, 2014                          s/ Michael J. Watanabe
           Denver, Colorado                      Michael J. Watanabe
                                                              United States Magistrate Judge